327 F.2d 131
 Thomas POWELL, Plaintiff-Appellant,
v.
WORKMEN'S COMPENSATION BOARD OF the STATE OF NEW YORK, American Mutual Liability Insurance Co., and O'Brien Bros. Shipyard Corporation, Defendants-Appellees.
Thomas POWELL, Plaintiff-Appellant,
v.
WORKMEN'S COMPENSATION BOARD OF the STATE OF NEW YORK, American Mutual Liability Insurance Co., O'Brien Bros. Shipyard Corporation, Lee & Simmons Lighterage Co., Inc., Liberty Mutual Insurance Co., Nelson Rockefeller, Governor of the State of New York, and Louis Lefkowitz, Attorney General of the State of New York, Defendants-Appellees.
 Nos. 51-52.
 Dockets 27753-28099.
 United States Court of Appeals Second Circuit.
 Argued October 14, 1963.
 Decided January 23, 1964.
 
 COPYRIGHT MATERIAL OMITTED Dora Aberlin, New York City, for plaintiff-appellant.
 Louis J. Lefkowitz, Atty. Gen. of the State of New York, pro se, and for defendants-appellees, Workmen's Compensation Bd. of the State of New York, and Nelson Rockefeller, Governor of the State of New York (Samuel A. Hirshowitz, First Asst. Atty. Gen., Irving L. Rollins, Asst. Atty. Gen., of counsel).
 Alexander, Ash & Schwartz, New York City (Sidney A. Schwartz, William N. Mairs, Jr., New York City, of counsel), for American Mutual Liability Ins. Co.
 Albert P. Thill, Brooklyn, N. Y., for Lee & Simmons Lighterage Co., Inc. and Liberty Mutual Ins. Co.
 Joseph Dean Edwards, New York City (James Gallatin Mackey, New York City, of counsel), for O'Brien Bros. Shipyard Corp.
 Before WATERMAN, HAYS and MARSHALL, Circuit Judges.
 WATERMAN, Circuit Judge.
 
 
 1
 Plaintiff, a disappointed claimant in proceedings before the New York Workmen's Compensation Board, brought two separate actions in the United States District Court for the Southern District of New York, based upon the manner in which his claim for compensation had been processed by the Board.
 
 
 2
 In Action No. 1 plaintiff joined as defendants the Board, his employer O'Brien Brothers Shipyard Corporation, and his employer's insurance carrier, American Mutual Liability Insurance Company. Seeking damages for alleged violations of his civil rights, plaintiff grounded his complaint on Sections 1983 and 1985 of 42 U.S.C., which sections are part of the body of laws commonly known as the Civil Rights Statutes, 42 U.S.C. §§ 1981-1985. Plaintiff claimed that defendants had conspired to deprive him and had in fact deprived him of the equal protection of the laws, and his rights, privileges and immunities as a United States citizen, by means of unlawful and dilatory tactics designed to hinder the processing of his claim for workmen's compensation. Jurisdiction was based upon 28 U.S.C. § 1343, which expressly empowers federal district courts to entertain civil actions for violations of civil rights.
 
 
 3
 In Action No. 2 plaintiff named as defendants the same parties he had sued in Action No. 1, and also joined as defendants a previous employer of his named Lee and Simmons Lighterage Company, Inc., the Governor of New York, and the Attorney General of New York. For a first cause of action plaintiff alleged the unconstitutionality of Section 123 of the New York Workmen's Compensation Law, and sought a judgment declaring Section 123 unconstitutional, restraining the Board from enforcing Section 123, and declaring an order of the Board issued pursuant to that section to be null and void. Plaintiff based his second cause of action on 28 U.S.C. § 1343, and asked for a judgment directing certain of the defendants to pay to him what he alleged to be a proper amount of compensation.
 
 
 4
 The court below dismissed plaintiff's complaint in Action No. 1 on the ground that it lacked jurisdiction over the subject matter of the suit, because of plaintiff's failure to exhaust state remedies available to him. The complaint in Action No. 2 was also dismissed for lack of jurisdiction over the subject matter, on the ground that it failed to present a substantial federal question. Plaintiff's cross-motion for an order convening a three-judge court to hear and determine the action was denied. The decision is reported at 214 F.Supp. 283. Plaintiff has appealed from the judgments in both actions, and the cases have been consolidated on appeal. Since the two cases present different questions of law, we shall consider them separately, supplementing, where necessary, the brief facts which have already been set forth.
 
 
 Action No. 1
 
 
 5
 The complaint in this action relates the long and involved story of plaintiff's efforts to secure workmen's compensation for a back injury which he sustained in 1957 while working for defendant O'Brien Brothers Shipyard Corporation. Apparently the immediate effect of the injury was to partially disable plaintiff, and he began to receive compensation at the rate of $15.64 per week as of February 28, 1957.
 
 
 6
 On April 8, 1958, while still being paid compensation at the above rate, plaintiff became totally disabled, he alleges, as a result of his 1957 injury. Defendants O'Brien Brothers Shipyard Corporation and its insurance carrier, American Mutual Liability Insurance Company, thereafter refused to pay plaintiff compensation at the increased rate of $36.00 per week, contending that plaintiff's total disability had occurred as the result of a previously compensated injury which he had sustained while working for another employer in 1941. Defendants did, however, continue to pay plaintiff compensation at the rate of $15.64 per week until May 19, 1958. On July 21, 1959, plaintiff underwent a spinal operation, the expenses of which defendants refused to pay.
 
 
 7
 On February 9, 1960, a referee of the New York Workmen's Compensation Board made an adjudication that plaintiff's disability was 50 per cent due to his 1957 accident and 50 per cent due to his 1941 accident, and that plaintiff was only 50 per cent disabled. Plaintiff appealed this decision to the Board, and on July 8, 1960, the Board, after a hearing, rescinded the referee's decision, reopened the earlier compensation case dealing with the 1941 injury, and restored the 1957 case to the referee's calendar for a hearing.
 
 
 8
 Hearings before a referee were thereafter held on October 28, 1960, February 17, 1961, and March 17, 1961, for the purpose of developing the record as to disability as a result of either or both accidents in question; but the matter was not resolved. Another hearing was held on May 5, 1961, and testimony was taken, but only as to whether liability could be apportioned to the 1941 accident. On July 21, 1961, the referee made a decision finally closing the 1941 case and directing that an early hearing be scheduled to determine the extent of plaintiff's disability and his earning capacity. A hearing for this purpose was later scheduled for September 7, 1961, but in the meantime plaintiff's employer and its insurance carrier had appealed the July 21, 1961 decision to the Board. The Board decided the appeal by holding that the 1941 case was properly open and by issuing an order of restoral. The hearing originally scheduled for September 7, 1961 was therefore canceled. At this time the Board asked plaintiff to make a formal request for the reopening of his 1941 case, but he refused.
 
 
 9
 On November 16, 1961, plaintiff made a demand on the Board for a formal hearing, and a hearing was scheduled for December 7, 1961. The referee at this hearing refused to take testimony as to plaintiff's disability and earning capacity, but granted plaintiff a temporary compensation award of $15.00 per week. Plaintiff's employer and its insurance carrier filed appeals from this decision on December 8, 1961 and December 29, 1961. Plaintiff alleges that as of the date of the filing of his complaint, March 27, 1962, no further action on his claim had been taken by the Board.
 
 
 10
 These delays and difficulties, according to the complaint, were not merely the result of natural administrative problems created by a complicated and heavily litigated claim; nor were they even due to honest errors on the part of those responsible for bringing the matter to final resolution. Rather, plaintiff alleges that he was hampered in his efforts to secure a just measure of compensation because of a successful conspiracy which the Board and the other defendants launched sometime after April 8, 1958, the date upon which plaintiff became totally disabled.
 
 
 11
 The purpose of this conspiracy, according to plaintiff, was to deprive him of the equal protection of the laws and his rights, privileges and immunities. Plaintiff has thus sought to take advantage of those sections of the Civil Rights Statutes found in 42 U.S.C. §§ 1983, 1985. Section 1983 gives a cause of action to any person who has been deprived of his constitutional rights, privileges or immunities under color of state law, while Section 1985 permits a suit by any person who has been the object of a conspiracy designed to deprive him of the equal protection of the laws.
 
 
 12
 The complaint was dismissed on the ground that plaintiff had failed to exhaust a remedy said to be embraced by New York's administrative scheme for the granting of workmen's compensation, by not availing himself of the appeal procedure set forth in Section 23 of the New York Workmen's Compensation Law. That section provides for an appeal from "an award or decision" of the Workmen's Compensation Board to the New York Supreme Court, Appellate Division, Third Department. The court below also noted the availability under state law of a proceeding under Article 78 of the New York Civil Practice Act to secure an order requiring the Board to take action on plaintiff's claim.
 
 
 13
 These were not proper grounds for dismissal, even assuming the legitimacy of the lower court's doubtful characterization of plaintiff's available state remedies as administrative. The applicable law, until recently, may well have required a complainant to exhaust available administrative remedies, but in most cases not judicial remedies, before bringing a civil rights suit in a federal court. Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281 (1939); Pacific Tel. & Tel. Co. v. Kuykendall, 265 U.S. 196, 44 S.Ct. 553, 68 L.Ed. 975 (1923); Bacon v. Rutland R. R., 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538 (1913); Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908); Heisler v. Parsons, 312 F.2d 172 (7 Cir. 1962); Dove v. Parham, 282 F.2d 256 (8 Cir. 1960); Baron v. O'Sullivan, 258 F.2d 336 (3 Cir. 1958); Carson v. Warlick, 238 F.2d 724 (4 Cir. 1956), cert. denied, 353 U.S. 910, 77 S.Ct. 665, 1 L.Ed.2d 664 (1957); Holt v. Raleigh City Bd. of Educ., 265 F.2d 95 (4 Cir.), cert. denied, 361 U.S. 818, 80 S.Ct. 59, 4 L.Ed.2d 63 (1959). The Supreme Court, however, has lately handed down a clear pronouncement that, with the possible exception of a very limited class of cases, relief is not to be denied under the Federal Civil Rights Statutes because of failure to exhaust available state remedies of either an administrative or judicial nature. McNeese v. Board of Educ. for Community Unit School Dist. 187, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) (reversing 305 F.2d 783 (7 Cir. 1962)). There do exist cases, noted by the majority in McNeese, where federal courts have been required to refrain from exercising jurisdiction temporarily until suit could be brought in a state court. See Harrison v. N. A. A. C. P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S. Ct. 628, 84 L.Ed. 876 (1940).[1] These were cases, however, designed to stay federal injunctive relief pending clarification of state law by its authorized expositors. In the case at bar, plaintiff has sued for money damages for an alleged conspiracy to deprive him of his constitutional rights. No injunctive relief is sought, and, as in McNeese, no underlying issue of state law is involved.
 
 
 14
 Moreover, we are not convinced that as of the time plaintiff filed his complaint in this action there was available to him an appeal under Section 23 of the New York Workmen's Compensation Law. It appears that at the time plaintiff filed his complaint the Board had acted on plaintiff's compensation claim twice, but both times had simply declared a prior case involving a similar injury to plaintiff to be properly reopened. These decisions were merely interlocutory in nature, permitting of no appeal under Section 23. Piekut v. Philip Fleischer, Inc., 276 App.Div. 702, 97 N.Y.S.2d 767 (3d Dept. 1950); La Barr v. Railway Express Agency, 270 App. Div. 870, 60 N.Y.S.2d 343 (3d Dept. 1946) (per curiam); Lepow v. Lepow Knitting Mills, Inc., 261 App.Div. 1013, 25 N.Y.S.2d 841 (3d Dept. 1941) (per curiam); Sparone v. General Electric Co., 203 App.Div. 273, 197 N.Y.S. 430 (3d Dept. 1922). The entire point of plaintiff's complaint was that the purpose of the alleged conspiracy was to obstruct justice by avoiding a final Board decision.
 
 
 15
 Having established his right to sue, however, plaintiff was still faced with the task of alleging facts sufficient to state a cause of action under the Civil Rights Statutes. Section 1983 of 42 U.S.C. gives a cause of action to any person who, under color of state law, is made to suffer a deprivation of any right, privilege or immunity secured by the Constitution and laws.[2] The section has been broadly interpreted as covering any right protected through the Fourteenth Amendment, and not simply those rights existing by virtue of the amendment's privileges and immunities clause. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Hague v. CIO, 307 U.S. 496, 526, 59 S.Ct. 954, 969, 83 L.Ed. 1423 (1939) (opinion of Stone, J.). Section 1985, on the other hand, grants a cause of action to any person who has been the victim of a conspiracy of two or more persons to deprive him of the equal protection of the laws.[3]
 
 
 16
 Though Section 1983 does not by its express terms cover a conspiracy directed toward a deprivation of any of the broad set of rights found in the section, the question has arisen whether the grant of such a cause of action for conspiracy ought to be implied. Compare Egan v. City of Aurora, 291 F.2d 706 (7 Cir.) (complying with the Supreme Court's mandate in 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961)), with Hoffman v. Halden, 268 F.2d 280 (9 Cir. 1959). See Lee v. Hodges, 321 F.2d 480, 486 (4 Cir. 1963). Plaintiff, in attempting to set forth the objects of defendants' alleged conspiracy, has apparently relied on the Fourteenth Amendment's due process clause as well as its equal protection clause, thereby implying that Section 1983 as well as Section 1985 covers conspiracies. We find it unnecessary to reach this question, however, for under our view of the case plaintiff has failed to allege facts sufficient to show the existence of any conspiracy designed to deprive him of his rights.
 
 
 17
 A complaint in a case like this must set forth facts showing some intentional and purposeful deprivation of constitutional rights. Snowden v. Hughes, 32 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). This complaint does contain some general allegations, framed in broad language closely paralleling that used in Sections 1983 and 1985(3), that defendants successfully conspired to deprive plaintiff of his rights. But plaintiff was bound to do more than merely state vague and conclusionary allegations respecting the existence of a conspiracy. It was incumbent upon him to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy. Hoffman v. Halden, supra, 268 F.2d at 295. See Dunn v. Gazzola, 216 F.2d 709 (1 Cir. 1954); Ortega v. Ragen, 216 F.2d 561 (7 Cir. 1954), cert. denied, 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268 (1955); Yglesias v. Gulfstream Park Racing Ass'n, Inc., 201 F.2d 817 (5 Cir.), cert. denied, 345 U.S. 993, 73 S.Ct. 1132, 97 L.Ed. 1400 (1953); McGuire v. Todd, 198 F.2d 60 (5 Cir.), cert. denied, 344 U.S. 835, 73 S.Ct. 44, 97 L.Ed. 649 (1952). This plaintiff has not done. The allegations contained in the complaint indicate no more than the action of several interested parties to a workmen's compensation proceeding, who sought vigorously to protect their own interests, coupled with the normal administrative processes of adjudication and appeal. Indeed, were we to hold this complaint sufficient, we would be inviting every party to a state proceeding angered at delay to file a complaint in this court reciting the history of his state case and concluding with a general allegation of conspiracy. Moreover, with respect to plaintiff's claimed deprivation of equal protection, he has not even alleged any discrimination essential to a denial of this right. Compare Oklahoma High School Athletic Ass'n v. Bray, 321 F.2d 269, 273 n. 3 (10 Cir. 1963) (no race discrimination alleged), with Lee v. Hodges, supra, 321 F.2d at 485-486 (4 Cir. 1963) (invidious discrimination alleged). For all of these reasons we affirm, though on grounds different from those relied on by the court below, the dismissal of the complaint.
 
 
 Action No. 2
 
 
 18
 The relationship between Action No. 1 and Action No. 2 is interesting. Action No. 1 was instituted because plaintiff felt aggrieved by the Board's failure to come to a final decision on his claim for compensation. Action No. 2, on the other hand, was commenced as a result of plaintiff's dissatisfaction with the decision the Board eventually did make on his claim after plaintiff had filed his complaint in Action No. 1.
 
 
 19
 The Board determined that only 50 per cent of plaintiff's disability was attributable to his accident of 1957, the other 50 per cent being a result of an accident in 1941 for which plaintiff had received compensation from a different employer. The Board directed plaintiff's 1957 employer and its insurance carrier to pay to plaintiff one-half the amount of compensation ordinarily due one suffering from plaintiff's disability, but refused to direct plaintiff's 1941 employer to pay any compensation. The Board's decision was based on Section 123 of the New York Workmen's Compensation Law. Section 123 provides that, although the Board has the power to modify past awards, no award of compensation shall be made "against an employer or an insurance carrier where application therefor is made after a lapse of eighteen years from the date of the injury or death and also a lapse of eight years from the date of the last payment of compensation."
 
 
 20
 Plaintiff alleges that Section 123 is unconstitutional, in that it deprives him and all other workmen like him of the equal protection of the laws. The section is said to be unfair in that it prohibits the reopening, after the lapse of the required time period, of an old compensation case for the purpose of increasing the award granted an injured workman while it permits the reduction of liability for a present disability by attributing part of it to the injury upon which a prior award was based. The court below dismissed the complaint, at the same time denying plaintiff's cross-motion for an order convening a three-judge court to hear and determine the case.
 
 
 21
 The court below was correct in dismissing without convening a three-judge court. Section 2281 of 28 U.S.C. does provide that an injunction "restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title." It is well established, however, that even though an injunction be requested on the basis of the unconstitutionality of a state statute, a district judge need not convene a three-judge court if the constitutional question presented in the complaint is wholly insubstantial. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962) (per curiam); Bell v. Waterfront Comm'n, 279 F.2d 853, 857-58 (2 Cir. 1960).
 
 
 22
 The complaint in this case did not raise a constitutional question of such substantiality as to require the convening of a three-judge court. Section 123 is, in effect, a simple statute of limitations, affecting plaintiff and all others similarly situated in like manner. If it be said to favor employers over injured workmen, the answer is that it does so no more than any statute of limitations may be said to benefit persons upon whom liability is sought to be imposed. Any failure of plaintiff to receive full monetary compensation for his injury is due to New York's legitimate policy for the granting of workmen's compensation, not to any denial to plaintiff of the equal protection of the laws. He is affected by the statute precluding full satisfaction for his injuries in the same manner and to the same extent as all other similarly situated persons. See Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). In fact, it may be persuasively argued that Section 123, by permitting the modification of past awards within the reasonable time period, actually works to the benefit of injured employees, who would have been barred at common law from reopening decided cases under the doctrine of res judicata.
 
 
 23
 Plaintiff's dismissed complaint contains a second cause of action, based on 28 U.S.C. § 1343, which we need discuss only briefly. This portion of the complaint merely contains allegations that the Board erred in its finding of facts and its application of New York law. Such allegations raise no substantial federal question. If such errors were in fact committed, the proper forum for rectifying them is to be found in the New York courts.
 
 
 24
 The orders appealed from in both cases are affirmed.
 
 
 
 Notes:
 
 
 [1]
 But see N. A. A. C. P. v. Bennett, 360 U.S. 471, 79 S.Ct. 1192, 3 L.Ed.2d 1375 (1959) (per curiam), where the Court, reversing, stated: "When the validity of a state statute, challenged under the United States Constitution, is properly for adjudication before a United States District Court, reference to the state courts for construction of the statute should not automatically be made."
 
 
 [2]
 Section 1983 reads:
 "§ 1983. Civil action for deprivation of rights
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 
 
 [3]
 Section 1985 provides, in pertinent part:
 "§ 1985. Conspiracy to interfere with civil rights — Preventing officer from performing duties
 * * * * *
 "Depriving persons of rights
 or privileges
 "(3) If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."